Uh, Council, please. Council, please proceed. It pleases the Court. My name is Paul Turner. I'm Assistant Federal Public Defender for the District of Nevada. I'm here this morning representing James Matthews. I'd like to reserve two minutes, Your Honor, for rebuttal, if I might. This is a Sentencing Guidelines Interpretation case, specifically interpreting the meaning of crime of violence under the Career Offender Sentencing Guideline, i.e. 4B1.2a. We took care of that in the last case, didn't we? Your Honor, we took care of the Armed Career Criminal. In the last case, but we didn't take care of the Career Offender. That came up after the last ruling, and therefore Mr. Matthews received what turned out to be the maximum he could, 120 months. The guideline range would have been 130 to 162, but it was maxed out because the Armed Career Criminal was eliminated. The Career Offender, however, would be a guideline. Absent the Career Offender, you're talking about a guideline range of 92 to 115. So there is some time at stake here, some significant time at stake. The approach that is required, we believe here, is that you have to take what is called the modified categorical analysis. The statute itself, the Nevada burglary statute, this is a burglary-ish case, a case of whether the burglary conviction that Mr. Matthews obtained in 87 is a crime of violence. The statute in Nevada is overbroad. It includes such things as vehicles, tents, and other objects, if you will, or other areas that are clearly broader than the generic definition of burglary. Therefore, the statute doesn't answer our question. You have to go to the charge. Under the guidelines, you would then go to the charge itself. And here we have a charge that Mr. Matthews entered the dwelling, excuse me, not a dwelling, that he willfully and feloniously entered that certain building occupied by Cheryl Riley, that certain building occupied by Cheryl Riley. I would submit to the Court that there is no controlling precedent for this case in the Ninth Circuit. Let me ask you a question about that. The way the federal test is worded in 4B1.2a, there's a catch-all phrase at the end, or otherwise involves conduct that presents a potential physical injury to another. And when I look at his judgment of conviction, it says, burglary, battery with intent to commit a crime, and grand larceny. Now, I agree with you that burglary not in a dwelling is, because of the breadth of the Nevada statute, is arguably broader than the federal burglary provision for crime of violence. But how do you get around the or otherwise involve conduct that presents potential physical injury to another in view of the combination of the burglary with the battery? I'm a little confused on that combination, Your Honor. The battery means hitting somebody. The battery was not. Sometimes that hurts them. The battery was not this conviction. That was a separate conviction that isn't. Is he looking at the wrong one? That I'm not sure, Your Honor, because I – What I'm looking at is judgment of conviction on page 52 of the excerpt. Excuse me, Your Honor, if I might. Go ahead. When I was reviewing the case, I just wanted to see the judgment, so I rooted around And it says, whereas, on February 19, 1986. Your Honor, can I interrupt you? I'm sorry. I apologize, but that is not the conviction that is relevant today. Okay. That's what I need to know. It's very confusing, because this is a conviction that you have to have two crime of violence convictions in order to be eligible. That's one. That's one dispute. That is correct, Your Honor. Okay. That is correct. The one today that we're talking about is simply, as I read to you, is simply the conviction for entering that certain building occupied by Cheryl Riley. Those are the limited words that are before the Court today. Now, if it says occupied by Cheryl Riley, why isn't – what page should I be looking at in the excerpt, Mr. Kelly? Do you know? Yes, Your Honor. Well, that's okay. I'm sorry, Your Honor. I believe it would be – it would be page 54. 54. Yes. And? It's count one of that charge, that information. Now, under that count one, it kind of raises the same concern for me. The building is – need not be a dwelling. But I know from the charge that he pleaded to that it was occupied. Yes. And that would seem to raise the same danger of violence as a dwelling because an occupant of a building being burglarized, there may be a shootout. Your Honor, occupancy in that context, I would submit, is used as it is defined in Black's Law Dictionary. Occupancy historically in property law and transferred over into burglary. As we know, burglary is a – has a relationship to property, obviously. That use of occupancy, I would submit, is to negate a vacant property. In other words, an occupied property is a property that's possessed by somebody as opposed to a vacant. If it really is an occupied property, it could be a retail establishment where commercial transactions took place. Absolutely, Your Honor. I would submit that it's a non-vacant property. It is a possessed property by somebody. It's a possessor of that property. In this case, the named party. That does not tell you whether there was somebody at the premises at the time of the burglary. And I would submit that that should be the dividing line. Potentially, there could have been, though. There could have been, Your Honor, and there could not have been. Same thing as a dwelling. You don't – there may not be anybody home, but when you enter the dwelling, but it's still a burglary. That's true, Your Honor, but we – dwelling has taken on a unique significance, mainly because the Sentencing Commission decided that it should. And I think, as Your Honor, I'm sure, aware, the Sentencing Commission did not adopt the use of the word burglary, per se, used in the armed career criminal statute. I know that, but you were – you were arguing that occupied might be the – someone who could potentially be there because they have some legal right to be there. They have a lease or something of that sort. But I'm saying it's – potential is the same – if you're talking about a dwelling, it's merely a potential encounter with someone who's in the building. There may not be anybody there. That's true, Your Honor. Are you saying that the government, at the time of the indictment, has to – has to essentially plead that entered a structure occupied by a human person at the time of the commission of the crime? Obviously, if they did – if they pled that somebody was physically there, that would certainly take care of the issue before the court. That would become a question that the jury would have to find in terms of the verdict. There are statutes that expressly require that. For example, the home invasion statute. Are you contending that that's what was required here? I'm contending, Your Honor, not that it would have to have been pled, but it would – but under the broader modified categorical analysis, that – those facts would have to be either in the change of plea, the – or the sentencing, or some other document the court can look at that would tell you that somebody was there. Short of that, this case is a non-residential case where there is no proof in anything before the court that an individual was there when the property was entered. That seems really remote to me. I mean, it says it was occupied by a person. Cheryl Riley, if it – and what you're saying is I understand it is that all that means is that it's owned by her. Or possessed, Your Honor. Or possessed. So that's the – It's so remote from the way we ordinarily talk. Well, Your Honor, I think – I mean, oh, for a while I owned a condo in Florida, but I didn't occupy the condo in Florida. I just owned it through odd happenstance. Never occupied it. I owned it. So I would never have said that I occupied it. I would have said I owned it. I think historically, Your Honor, occupied was used in the sense I'm saying by – it came from the common law because I think that burglary is a crime against the – that is against the possessor of the property. And occupied was used in the sense of owner or possessor. That was the way it was used. And that's the way it's defined in Blacks. And I would submit, Your Honor, that Blacks is – One – there are multiple definitions in any dictionary. Yeah. Blacks seems to emphasize possession. And this Court obviously uses Blacks. The Supreme Court uses Blacks. I agree with Your Honor that there can be more general definitions of occupy. You're absolutely right. I just noticed that when you and Judge Beeser were talking a moment ago, you were using the word occupy in its ordinary sense of being there. I think there's a risk in a sense or a danger of being loose with language. Certainly lawyers have that risk, and I'm one of them. But this Court has to look at the definition and has to apply. What I'm thinking about, frankly, is there are many localities, rural localities, certainly the area where I live where most long-term residents have guns. And you go in – if a burglar is – who goes into a place where there are people there, there's likely to be somebody with a gun. It's dangerous. An unoccupied building, such as a boarded-up summer cabin in the winter where nobody is there, if the burglar makes sure nobody is there, then there won't be a gun. And that's the way we'd ordinarily talk about it. We wouldn't say the unoccupied building means an abandoned building. It usually isn't. Can I get one? I'm sorry. Judge Beeser. Are you through? Are you through with this? I guess so. Go ahead. I have one more question. You seem to seek a remand with a direction to the district court to impose a sense of a maximum of 115, right? Yes, sir. Are you telling me that we cannot remand to the district court with instructions to do a complete pre-sentence report and re-sentence the defendant properly? The thing that concerns me, there may be some other elements in the guidelines that still could take this up to 120. We're talking about from the max to the statutory max is 10 years. The guidelines max is 115. We're only talking five months difference. And I don't know whether there are any other elements to the sentencing that would increase the sentence otherwise. And I would feel uncomfortable doing what you suggest. If I were to accept your argument, I would prefer to just go back and start with a pre-sentence report, give the opportunity to both parties to have input in it, and to have the district judge fairly consider it and impose it. What's your answer? Your Honor, there is a 1998 pre-sentence report. But I think Your Honor is looking for something upgraded or something different. I have no idea. There is a 1998 one. But I think under this Court's law, I believe, and this is off the top of my head, but I believe this Court has said that when it goes back for a re-sentencing that the Court does have a right to recalculate probably almost anything, I think. That's a little different than the relief you request, right? Yeah. Obviously, I'm not encouraging anyone to do that. But I think the Court does have a right to do that. This case interests me. That's all I need. Thank you. Thank you, Your Honor. Thank you, counsel. It pleases the Court. I'm Robert Borick representing the United States from the District of Nevada. Answering some of the Court's questions, I would agree with Judge Cudahy. The requirement isn't that a person actually be physically present. In the burglary of a dwelling definition, there's no requirement that they actually be home. It is a definitional instance. In this case, Nevada law does not require a charge that someone be – that the building be occupied. It's not listed anywhere in the statute. There's no specific enhancement because of it. So it is a significant factual allegation that's been made by the authorities that the building was occupied. It's named by a person. It doesn't say Toys R Us or Sears or some public entity. It names a person. That's occupied also, isn't it? I'm sorry? You can't say those – you can't say the retail establishment is unoccupied. That's correct. I'm just indicating that was – You can't say a person is present or there was no person present. But that doesn't deal with occupancy. I have all my goods and wares and merchandise and bookkeeping records, all kinds of stuff in an occupied law office, for example. I agree. But I think it's inherently more dangerous to go into an occupied building or structure, whether someone is present or not, physically present, than it is in an abandoned building. And we're talking about an occupied building. But that's not the charge made. It's just an occupied structure. That's correct, building. But I –  It's a structure. Yes, Your Honor. It's not a – you don't allege it's a residential structure. We agree it does not fall. And you don't say that a person was present at the time of the commission of the crime. I don't think we need to, but we cannot. You're correct. I don't know what the facts are, because you didn't plead them. And she didn't plead to them. Well, in this particular case, the facts alleged in the information were exactly what the defendant pled to. We have the transcript where the judge asks the defendant, did you enter this occupied building, I think, and the defendant says yes, to steal something in it. Okay. Would it – So I believe we have sufficient facts, Your Honor. Would it be consistent with your interpretation, what you're putting before us, if Cheryl Riley was the lessee of a store in a mall, the burglar went into the mall at night when nobody was there and broke into her store and stole some purses or whatever she was selling. That would be a building occupied by Cheryl Riley? It would not, I believe, because you look at the analysis that was done by the Taylor case defining 924E, and it's important – that case is important because the guidelines themselves recognize that the 4B1.2 crime of violence definition was derived from 924E. And in that case, the Taylor decision, the Supreme Court specifically noted that even commercial burglaries, an offender entering a building or attempting to enter a building creates the possibility of a violent confrontation. So I think the significance is there is a difference between an abandoned or vacant building and a building that is occupied. Well, what I'm getting at really is – okay. I take your point on that. I'm getting at the distinction between burglary in a dwelling and burglary not in a dwelling, the traditional common law distinction between the more and less serious burglaries because it's more and less dangerous. And you might recall that Taylor, in fact, looked at that because when they were asked to narrowly define the definition of burglary under 924E, they expressly rejected the narrow common law definition, the traditional common law. Common law requires it to be at night. That's correct, at night in a home. And they rejected that. And they said – they said, as I indicated, that they included commercial spaces. And I would note that other cases that have defined this, the Wilson and Haskell cases, noted that the commission has never bothered to limit this. In fact, they have rejected amendments attempting to limit this definition strictly to burglaries of a dwelling. What does the facts show here? What building was involved here? The nature of the building, sir, we do not know. It wasn't in the factual basis of the plea? No, sir. The only facts that are pled to are those contained in the information which merely says a building occupied by the named person, Your Honor. But I still believe that under the modified Karagor approach, excuse me, that is sufficient. I would note a footnote also in the Taylor case I think is significant. At page 600, note 9, when talking about the impact of their decision, they quote, the government remains free to argue that any offense, including offenses similar to generic burglary, should count towards enhancement as to the otherwise involved conduct provision. So the policy decision to consider an occupied building such as this is consistent with Ninth Circuit, excuse me, United States Court interpretation. It's consistent with the interpretation in Fiore in the First Circuit, the Wilson case in the Sixth, the Haskell case in the Eighth. And it is consistent with the Weekly decision. And in that case, although the term residence was noted, the Court went on and independently found under the otherwise clause that the particular building, because it was occupied, was sufficient for it to be a crime of violence under the provision involved. So I think under the law, it is appropriate for the Court to consider that. I would also note in the Smith case, which is the strongest case rejecting this proposal, that it must be a dwelling, the burglary of a dwelling as opposed to otherwise, even that case concedes that this is a policy issue and not a prohibition under the law. So therefore, we believe that the Court has the authority to make this decision, and the decision is consistent with the United States and Circuit law and the Sentencing Commission, and ask that you affirm the sentence. Thank you. Thank you, counsel. Counsel, I think you have used up all your time. I'm sorry, Your Honor. I wanted to just respond to Taylor. Well, take a few seconds. I just wanted to reaffirm that the Taylor case doesn't control this case. Taylor is an armed career criminal case. This is a career offender case. The definition is not the same. Three key words were eliminated or were added to the career offender definition of a dwelling. And burglary of a dwelling is the key to that. The emphasis in the career offender is on dwelling. It's always on dwelling. In fact, that's been the law. That is the law. Taylor does not control. This is a different case. The Taylor procedure may be useful to help here, but the substance doesn't control. And I just ask the Court to look carefully at these definitions. This will be new precedent in this circuit, and I think it's an extremely important case. Thank you, Your Honor. Thank you, counsel. States v. Matthews is submitted. Next, we'll hear United States v. Campos.
judges: Cudahy, Beezer, Kleinfeld